UNITED STATES DISTRICT COURT
DISTRICT OF HAWAI`I

MICHAEL BOTELHO,

        Plaintiff,

    v.

TRANSPORTATION SECURITY
ADMINISTRATION; AND KIRSTJEN M.
NIELSEN, SECRETARY OF THE UNITED
STATES DEPARTMENT OF HOMELAND
SECURITY;

        Defendants.

CIV. NO. 18-00032 ACK

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT KIRSTJEN M. NIELSEN'S MOTION TO DISMISS

        For the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART Defendant Kirstjen M. Nielsen's Motion to Dismiss for Lack of Subject-Matter Jurisdiction, ECF No. 15. Plaintiff's Rehabilitation Act claims are DISMISSED WITH PREJUDICE; the Court declines to dismiss Plaintiff's Title VII claims; and Defendant Transportation Security Administration is DISMISSED WITH PREJUDICE.

## PROCEDURAL BACKGROUND

        On January 19, 2018, Michael Botelho ("Plaintiff") filed a Complaint against the Transportation Security Administration (the "TSA") and Elaine C. Duke in her official capacity as Acting Secretary of the United States Department of Homeland Security ("DHS"). ECF No. 1. Plaintiff asserts claims

against the Defendants pursuant to (1) the Rehabilitation Act of 1973 and (2) Title VII of the Civil Rights Act of 1964. Compl. at ¶¶ 37-38. Specifically, Plaintiff appears to allege that he was discriminated against on the basis of his disability (diabetes), subjected to a hostile work environment, and retaliated against for engaging in a protected activity. Prior to filing his Complaint in this Court, Plaintiff exhausted his administrative remedies when he filed an Employment Opportunity ("EEO") complaint alleging that he was discriminated against on the basis of his age, disability, and engaging in a protected activity,[1] Id. at ¶ 32; however, it appears that Plaintiff did not include his hostile work environment claim in his EEO complaint. See ECF No. 1-1, Final Order at 2-3.

On June 1, 2018, Defendant Kirstjen M. Nielsen ("Defendant Nielsen"), Secretary of the United States DHS, filed a Motion for Dismissal or, in the Alternative, for Summary

---

[1] It appears that on March 21, 2011, Plaintiff filed the EEO complaint that forms the basis of this action. ECF No. 1-1, Final Order at 2. Plaintiff's Complaint states that the EEOC Administrative Judge issued a decision on September 8, 2017 granting summary judgment in favor of the TSA. Compl. ¶ 34. Plaintiff was served with the DHS's Final Order on October 23, 2017 and filed the instant civil action with this Court within the 90-day period provided in the DHS's Final Order. Id. at ¶¶ 35-36.

Judgment.[2]  ECF No. 15.  On the same day, Defendant Nielsen submitted her Concise Statement of Facts along with various declarations and exhibits.  ECF No. 16.  The Court set a Hearing on the Motion for September 10, 2018.

On August 15, 2018, the Court approved a Stipulation that the parties filed in which they agreed to continue various deadlines and also stipulated that Defendant Nielsen would withdraw without prejudice the summary judgment portion of her Motion.  ECF No. 18.  Pursuant to the Stipulation, the Court continued the Hearing set for September 10, 2018 to December 17, 2018.  On November 13, 2018, the Court approved another Stipulation withdrawing without prejudice the summary judgment portions of Defendant Nielsen's Motion (Sections IB and III).[3] ECF No. 24.  The remaining sections of Defendant Nielsen's Motion (Sections IA and II) are brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Although Defendant Nielsen's Motion states that it is brought pursuant to Rules 12(b)(1) and 12(b)(6), Mot. at 2, the parties' papers only

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Secretary Nielsen was substituted for Acting Secretary Duke when she acceded to that position on December 6, 2017.  Mot. at 1.
[3] The Court notes that the parties did not stipulate to withdrawing Defendant Nielsen's Concise Statement of Facts submitted in connection with the summary judgment portion of her Motion.  Because the summary judgment portion of Defendant Nielsen's Motion is not before the Court at this time, the Court does not consider Defendant Nielsen's Concise Statement of Facts at this time.

discuss whether the Court has subject-matter jurisdiction over Plaintiff's claims.  Accordingly, the Court confines its analysis to that issue.

On November 26, 2018, Plaintiff filed his Memorandum in Opposition to Defendant Nielsen's Motion.  ECF No. 25.  On December 3, 2018, Defendant Nielsen filed her Reply.  ECF No. 27.  A Hearing on Defendant Nielsen's Motion to Dismiss was held on December 17, 2018.

## FACTUAL BACKGROUND

The facts in this Order are recited only for the purposes of deciding Defendant Nielsen's Motion to Dismiss and are not intended to be findings of fact upon which the parties may rely in future proceedings.

According to the Complaint, Plaintiff is a disabled 55-year-old male who resides in Honolulu, Hawai`i.  Compl. ¶ 4. Plaintiff was appointed to a position as a Transportation Security Screener with the TSA at the Daniel K. Inouye Honolulu International Airport ("HNL") in November 2002.  Id. at ¶¶ 5-6. He was promoted to a Supervisory Screener position in September 2003.  Id. ¶ 7.  In April 2004, Plaintiff filed an EEO complaint alleging that his manager had sexually harassed him.  Id. at ¶ 9.  Around the same time, some sort of inquiry was conducted regarding Plaintiff's conduct at work.  Id. at ¶ 8.  This inquiry, which Plaintiff does not describe, was apparently so

stressful that it caused him to take two-and-one-half years'
leave.  Id. at ¶ 10.  In October 2004, while on leave, Plaintiff
was demoted to a Lead Screener position.  Id. ¶ 13.

The TSA issued Plaintiff a Notice of Proposed Removal
on January 26, 2007 because he was absent from work for two-and-
one-half years.  Id. at ¶ 14. Plaintiff was diagnosed with
diabetes in February 2007.  Id. ¶ 11.  The TSA issued Plaintiff
a second Notice of Removal on March 7, 2007.  Id. at ¶ 16.  Two
days later, Plaintiff and the TSA entered into a "Last
Chance/Abeyance Agreement" that set forth certain terms
Plaintiff agreed to abide by for one year in order to avoid
being removed; Plaintiff complied with the agreement and
withdrew his EEO complaint when he returned to work in 2007.
Id. at ¶¶ 10, 16-17.  In July 2008, Plaintiff was assigned to
the position of Behavior Detection Officer and remained in this
position until he was terminated in March 2012.  Id. ¶¶ 18-19.

In March 2009, Plaintiff applied for intermittent
leave under the Family and Medical Leave Act ("FMLA") on the
basis of his diabetes diagnosis, which was granted.  Id. ¶ 20.
In 2010, Plaintiff went on a trip to Canada where he had a
"severe diabetic reaction" and, based upon the recommendation of
his doctor, remained in Canada on medical leave for two weeks
before returning to work in Honolulu.  Id. ¶¶ 22-25.  Sometime
after returning to work, the TSA initiated an informal

investigation into Plaintiff's absences from work, and thereafter began a formal investigation.[4]  Id. ¶¶ 26, 28. Plaintiff was subsequently terminated on March 9, 2012 based upon Plaintiff's "leave fraud and improper absence."  Id. ¶ 29.

Plaintiff then filed the EEO complaint that forms the basis of this action.  Id. ¶ 32.

### STANDARD

A court's subject-matter jurisdiction may be challenged under Federal Rule of Civil Procedure 12(b)(1).  Such challenges may be either "facial" or "factual."  Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).

In a facial attack, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  Id. (quoting Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004)).  When opposing a facial attack on subject-matter jurisdiction, the nonmoving party is not required to provide evidence outside the pleadings.  Wolfe, 392 F.3d at 362; see Doe v. Holy See, 557 F.3d 1066, 1073 (9th Cir. 2009) (treating defendant's challenge to subject-matter jurisdiction as facial because defendant "introduced no evidence contesting any of the allegations" of the complaint).  In deciding a facial Rule 12(b)(1) motion, the

---

[4] Plaintiff does not allege when the TSA initiated these investigations.

court must assume the allegations in the complaint are true and draw all reasonable inferences the plaintiff's favor. <u>Wolfe</u>, 392 F.3d at 362 (citations omitted).

By contrast, in a factual attack, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." <u>Wolfe</u>, 392 F.3d at 362 (quoting <u>Safe Air</u>, 373 F.3d at 1039). The moving party may bring a factual challenge to the court's subject-matter jurisdiction by submitting affidavits or any other evidence properly before the court. The nonmoving party must then "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject-matter jurisdiction." <u>Colwell v. Dep't of Health & Human Servs.</u>, 558 F.3d 1112, 1121 (9th Cir. 2009) (citation omitted). In these circumstances, the court may look beyond the complaint without having to convert the motion into one for summary judgment. <u>U.S. ex rel. Meyer v. Horizon Health Corp.</u>, 565 F.3d 1195, 1200 n. 2 (9th Cir. 2009). When deciding a factual challenge to the court's subject-matter jurisdiction, the court "need not presume the truthfulness of the plaintiffs' allegations." <u>Id.</u>

## **DISCUSSION**

Defendant Nielsen argues that this Court lacks subject-matter jurisdiction over Plaintiff's claims because

section 111(d) of the Aviation and Transportation Security Act (the "ATSA") preempts Rehabilitation Act claims brought by security screeners against the TSA. Mem. at 1. The parties agree that this is a facial attack on this Court's subject-matter jurisdiction. Mem. at 3; Opp. at 2. The Court finds that this is, indeed, a facial attack because the parties do not appear to dispute at this time the factual allegations underlying Plaintiff's Complaint. Accordingly, the Court proceeds with its analysis by first addressing Plaintiff's Rehabilitation Act claims and second addressing Plaintiff's Title VII claims.

For the reasons set forth below, the Court finds that the ATSA precludes security screeners from bringing Rehabilitation Act claims against the TSA; therefore, the Court dismisses Plaintiff's Rehabilitation Act claims for lack of subject-matter jurisdiction. The Court declines to dismiss Plaintiff's Title VII claims because it appears that the ATSA does not preempt Title VII as a general matter, and because the parties did not brief the issue.

## I.    Rehabilitation Act Claims (First Cause of Action)

In general, the Rehabilitation Act protects federal employees from discrimination on the basis of disabilities. 29 U.S.C. §§ 791, 794. Defendant Nielsen argues that the ATSA excludes TSA security screeners from the protections afforded to

federal employees under the Rehabilitation Act, citing longstanding precedent in support of her proposition, and therefore the Court may not exercise subject-matter jurisdiction over Plaintiff's claims. Mem. at 4-5. Plaintiff concedes that the ATSA preempts certain Rehabilitation Act claims brought by security screeners, but argues principally that (1) the cases which hold that the ATSA preempts Rehabilitation Act claims are bad law; (2) the preemption determination must be made on a case-by-case basis; and (3) to find that the ATSA preempts Rehabilitation Act claims leaves security screeners without legal recourse. Opp. at 2, 7, 9. The parties do not appear to dispute the fact that Plaintiff, who was a Behavior Detection Officer at the time of the alleged discrimination and retaliation, was a security screener for purposes of determining whether his claims are preempted. See also Connors v. United States, 863 F.3d 158, 160 (2d Cir. 2017) (finding that an "Expert Behavior Detection Officer" was subject to the "notwithstanding" provisions of the ATSA).

The Court begins by first providing some background on the ATSA and the statutory provisions that are relevant to the instant proceedings, as well as the case law which discusses ATSA preemption of the Rehabilitation Act. The Court then addresses Plaintiff's arguments.

The ATSA was enacted in the wake of the September 11, 2001 terrorist attacks in order to ensure the safety and security of the civil air transportation system in the United States. H.R. Rep. 107-296, pt. 2 at 53 (2001).[5] Among other things, the ATSA authorized the creation of the TSA and a federal workforce to provide security screening operations at airports. 49 U.S.C. § 114. Congress decided to grant the Under Secretary of Transportation for Security[6] wide latitude in determining and establishing the terms of employment for TSA security screeners. See Field v. Napolitano, 663 F.3d 505, 508 (1st Cir. 2011) (citing H.R. Rep. No. 107-296, pt. 21, at 57).

The sections of the ATSA that are relevant to the Court's current inquiry principally accomplished three things. First, 49 U.S.C. § 44935(a) granted the TSA Administrator broad powers to develop uniform training standards and uniform minimum qualifications for security screeners. Second, 49 U.S.C. § 44935(e)-(f) mandated that the TSA Administrator establish a program for the hiring and training of security screeners, and also establish employment qualification standards within thirty

---

[5] For a detailed discussion of the legislative history surrounding the ATSA, see Pino v. Hawley, 480 F. Supp. 2d 818, 821-23 (W.D. Pa. 2007).
[6] While the ATSA refers to the "Under Secretary of Transportation for Security," the position is now known as the "Administrator of the Transportation Security Administration." See 49 C.F.R. § 1500.3.

days of enactment of the ATSA, 49 U.S.C. § 44935(e); the ATSA also set forth specific minimum standards for security screeners relating to physical ability, stating that "[n]otwithstanding any provision of law, an individual may not be deployed as a security screener unless that individual meets" certain physical requirements related to aural and visual perception, as well as physical strength and dexterity. 49 U.S.C. § 44935(f). Third, section 111(d) of the ATSA, codified as a note to 49 U.S.C. § 44935, granted the TSA Administrator broad authority over security screener personnel matters. Specifically, section 111(d) states:

> Notwithstanding any other provision of law, the Under Secretary of Transportation for Security may employ, appoint, discipline, terminate, and fix the compensation, terms, and conditions of employment of Federal service for such a number of individuals as the Under Secretary determines to be necessary to carry out the screening functions of the Under Secretary under section 44901 of title 49, United States Code.

ATSA § 111(d) (49 U.S.C. § 44935 (historical and revision notes)).

These sections of the ATSA illustrate two points. First, the ATSA necessarily conflicts with the rights of the disabled under the Rehabilitation Act to at least some degree due to the ATSA's mandated physical qualification requirements. Second, Congress granted the TSA Administrator extremely broad

- 11 -

authority over security screener qualifications and training, as well as security screener employment matters generally.

Accordingly, the Court must determine whether the "notwithstanding" clauses in the ATSA preempt claims brought by security screeners under the Rehabilitation Act.

The case law is abundantly clear that such claims are preempted in every instance. "Every circuit to address the issue has agreed that the language of the ATSA plainly precludes security screeners from bringing suit under certain of the federal employment statutes incorporated under Title 5 of the United States Code, including the Rehabilitation Act." Field, 663 F.3d at 512 (listing cases and holding that the ATSA preempts claims by screeners for disability discrimination and retaliation as a result of engaging in protected EEO activity). In addition to the First Circuit, the Courts of Appeal for the Third, Seventh and Eleventh Circuits have all held that the ATSA preempts claims brought by security screeners pursuant to the Rehabilitation Act. See Coleman v. Sec'y U.S. Dep't of Homeland Sec., 649 Fed. App'x 128, 129-30 (3d Cir. 2016) (granting defendant's 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction because the ATSA precludes transportation security officers from bringing suit under the Rehabilitation Act); Joren v. Napolitano, 633 F.3d 1144, 1147 (7th Cir. 2011) (cert. denied, 565 U.S. 898 (2011)) ("We now join every other

circuit to have considered the question and conclude that the plain language of the ATSA preempts application of the Rehabilitation Act to security screeners"); Castro v. Sec'y of Homeland Sec., 472 F.3d 1334, 1338 (11th Cir. 2006) (holding that the ATSA preempted claims by applicants for security screener positions based on violation of the Rehabilitation Act).

The Second and Federal Circuits have held that the "notwithstanding" language of the ATSA preempts claims by security screeners against the TSA which are brought pursuant to other federal laws, too. See Conyers v. Rossides, 558 F.3d 137, 148 (2d Cir. 2009) (holding that federal courts lack subject-matter jurisdiction to review Administrative Procedure Act claims by applicants to TSA security screener positions); Connors, 863 F.3d at 159-60 (holding that federal courts do not have subject-matter jurisdiction to review claims brought under the Administrative Procedure Act regarding termination of TSA security screeners); Conyers v. Merit Sys. Prot. Bd., 388 F.3d 1380, 1382-83 (Fed. Cir. 2004) (holding that section 111(d) of the ATSA exempts the TSA from federal laws that otherwise would apply to screener positions based on Congress's intent to provide the TSA administrator with "'wide latitude to determine the terms of employment of screeners'" (quoting H.R. Rep. 107-296, pt. 21, at 64)).

Every district court in the country which has faced this question, including several within the Ninth Circuit, has invariably agreed that the ATSA preempts Rehabilitation Act claims brought by TSA security screeners.  See, e.g., Jackson v. Napolitano, No. CV-09-1822-PHX-LOA, 2010 WL 94110, at *6 (D. Ariz. Jan. 5, 2010); Mole-Donchez v. Johnson, No. 2:13-cv-00847-APG, 2015 WL 3452058, at *2 (D. Nev. May 29, 2015); Yeager v. Chertoff, No. C06-0740RSM, 2006 WL 4673439, at *4 (W.D. Wash. Nov. 13, 2006); Pino, 480 F. Supp. 2d at 825; Ringgold v. Napolitano, Civil No. CCB-13-210, W2013 WL 4852246, at *3 (D. Md. Sept. 10, 2013); Tucker v. Ridge, 322 F. Supp. 2d 738, 743 (E.D. Tex. 2004).

Notwithstanding the uniform agreement of every court that has considered this question, Plaintiff argues that the other courts have engaged in "misapplied, illogical reasoning" and urges this Court to exercise subject-matter jurisdiction over Plaintiff's claims.  Opp. at 9-10.  The Court declines to do so for the reasons that follow.

In exercises of statutory construction, the Supreme Court has held that "when the statutory language is plain, we must enforce it according to its terms."  Jimenez v. Quarterman, 555 U.S. 113, 118 (2009).  The Supreme Court has also held that "notwithstanding" language indicates Congress's intent for a new law to override contrary provisions of existing laws.  Shomberg

- 14 -

v. United States, 348 U.S. 540, 547-48 (1955); see also Cisneros v. Alpine Ridge Grp., 508 U.S. 10, 18 (1993) (explaining that the use of a notwithstanding clause "clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section"). In the Ninth Circuit, courts must construe the reach of a given "notwithstanding" clause by taking into account the whole of the statutory context in which it appears. United States v. Novak, 476 F.3d 1041, 1046-47 (9th Cir. 2007) (citing Oregon Nat. Res. Council v. Thomas, 92 F.3d 792, 796 (9th Cir. 2007)).

        The Court finds that the plain meaning of the phrase "[n]otwithstanding any other provision of the law" clearly conflicts with claims brought by security screeners pursuant to the Rehabilitation Act in two ways. First, the disability protections afforded to federal employees under the Rehabilitation Act clearly conflict with the physical screener requirements specified in the ATSA. See 49 U.S.C. § 44935(f)(1)(B). Second, Rehabilitation Act protections also clearly conflict with the TSA Administrator's authority to "employ, appoint, discipline, [and] terminate" screener personnel "[n]otwithstanding any other provision of law." 49 U.S.C. § 44935 (notes and revisions). Congress intended to provide the TSA Administrator with significant discretion regarding the employment of security screeners. Specifically,

"in order to ensure that Federal screeners are able to provide
the best possible security," Congress granted the TSA
Administrator "wide latitude to determine the terms of
employment of screeners."  H.R. Rep. 107-296, pt. 21, at 64.
The Court finds that exercising jurisdiction over Plaintiff's
Rehabilitation Act claims would subvert both the plain meaning
of the ATSA and congressional intent.  See Joren, 633 F.3d at
1146 ("the ATSA's plain language reflects Congress's intent to
preempt the application of the Rehabilitation Act to security
screening positions").

The First Circuit's reasoning in Field is particularly
persuasive.  The Court in Field found that:

> Allowing security screeners to bring suit
> under the Rehabilitation Act would be
> inconsistent with [the ATSA's] statutory
> mandates in several respects.  First, these
> specific ATSA requirements as to security
> screeners and the assignment of
> qualifications to the TSA Administrator
> displace the broader and more general
> standards of the Rehabilitation Act.
> Compare 49 U.S.C. § 44935(e)-(f), with 29
> U.S.C. § 794.  Second, these provisions
> preclude second-guessing of TSA's decisions
> as to implementing the criteria Congress has
> established and the discretion as to
> employment decisions given to TSA.  Third,
> in combination with the notwithstanding
> clauses, these provisions evidence a clear
> intent to free TSA from the costs and
> burdens of litigation in federal court over
> such decisions.

663 F.3d at 511-12.

For the foregoing reasons, the Court agrees with every
other court that has considered the question and finds that the
ATSA preempts Plaintiff's Rehabilitation Act claims.
Accordingly, the Court finds that the ATSA precludes TSA
screeners from filing suit against the TSA pursuant to the
Rehabilitation Act, and therefore the Court may not exercise
subject-matter jurisdiction over Plaintiff's Rehabilitation Act
claims.  See Coleman, 649 Fed. App'x at 129.

Plaintiff argues in the alternative that courts must
undertake a case-by-case analysis in order to determine whether
the ATSA preempts a Rehabilitation Act claim.  Plaintiff
provides no authorities in support of his argument, and the
Court agrees with the First Circuit in finding that the argument
lacks merit.

In Field v. Napolitano, the First Circuit specifically
rejected the argument that preemption requires a case-by-case
analysis because the plain meaning of the ATSA indicated that
Congress did not intend such a result.  663 F.3d at 513
("Plaintiff proposes we adopt the view . . . that the TSA's
exemption from the Rehabilitation Act must be determined on a
case-by-case basis . . . .  We reject this argument").  The
court rejected the case-by-case approach which was expressed in
several EEOC appellate decisions because "Congress gave the EEOC
no role to play in interpreting the ATSA."  Id.  The Third

Circuit has similarly held that "any claim under the Rehabilitation Act fails as the ATSA precludes [Transportation Security Officers] from bringing claims under that Act against the TSA." Coleman, 649 Fed. App'x at 129 (emphasis added).

Plaintiff argues that Rehabilitation Act claims are preempted only where the disability at issue conflicts with a specific qualification requirement enumerated in 49 U.S.C. § 44935(f). Opp. at 5-6. The Court finds that this argument is without merit because of section 111(d) of the ATSA, which, as the Court has discussed, grants the TSA Administrator broad discretion over the employment terms of security screeners, including termination.

Accordingly, the Court rejects plaintiff's contention that ATSA preemption of Rehabilitation Act claims requires a case-by-case analysis.

As a last resort, Plaintiff argues that construing the ATSA in a way that preempts claims raised under the Rehabilitation Act leads to absurd results because security screeners are left with no legal recourse through which to address disability discrimination and harassment. Opp. at 7-9.

The Court rejects Plaintiff's argument because the statement that security screeners have no legal recourse through which to pursue disability discrimination claims is patently false. Specifically, on August 14, 2017, the TSA issued

Management Directive No. 1100.73-3 titled "Anti-Harassment Program."  This directive prohibits harassment and discrimination on the basis of a large number of factors including disability and participation in protected activities. TSA Management Directive No. 1100.73-3, at 4, (August 14, 2017) ("Anti-Harassment Program").  The directive also provides that, when faced with harassment or discrimination, TSA employees may file a complaint of discrimination with the Office of Civil Rights & Liberties, Ombudsman, and Traveler Engagement.  TSA Management Directive No. 1100.73-3, at 2.

Furthermore, on August 22, 2018, the TSA issued Management Directive No. 1100.73-4 titled "Reasonable Accommodation Program."  The purpose of this directive is to affirm "TSA policy and procedures for processing requests for reasonable accommodation made . . . pursuant to the Rehabilitation Act . . . ."  TSA Management Directive No. 1100.73-4, at 1 (August 22, 2018).  Clearly, the TSA has specific procedures in place to deal with the exact sort of disability discrimination that Plaintiff complains of.

Accordingly, the Court rejects Plaintiff's argument that preemption of Rehabilitation Act claims by security screeners leads to absurd results and leaves security screeners without legal recourse.

The Court now addresses a final issue which Plaintiff raised at the Hearing held on December 17, 2018.  Plaintiff asserted that this Court has subject-matter jurisdiction over Plaintiff's Rehabilitation Act claims, and that the arguments raised in the parties' papers are properly raised in the context of a Rule 12(b)(6) motion to dismiss for failure to state a claim.  The Court rejects Plaintiff's argument and finds that a Rule 12(b)(1) motion is a proper vehicle through which to dispose of Plaintiff's Rehabilitation Act claims, notwithstanding the fact that many courts have dismissed such claims pursuant to Rule 12(b)(6).[7]

Federal courts are courts of limited jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citations omitted).  The jurisdiction of the lower federal courts is derived exclusively from Congress.  Kline v. Burke Const. Co., 260 U.S. 226, 234 (1922).  Congress "may give, withhold or restrict such jurisdiction at its discretion, provided it be not extended beyond the boundaries fixed by the Constitution."  Id.

Here, by enacting section 111(d) of the ATSA, Congress exercised its power to restrict the jurisdiction of the federal courts by divesting them of jurisdiction over certain claims

---

[7] See, e.g., Field, 663 F.3d 505; Joren, 633 F.3d 1144.

against the TSA—including Rehabilitation Act claims by TSA security screeners.  For this reason, the Court lacks subject-matter jurisdiction over Plaintiff's Rehabilitation Act claims. See Coleman, 649 Fed. App'x at 129 (affirming the district court's dismissal of the plaintiff's Rehabilitation Act claims for lack of subject-matter jurisdiction because "any claim under the Rehabilitation Act fails as the ATSA precludes [security screeners] from bringing claims under that Act against the TSA"); see also Connors, 863 F.3d at 161 (holding that courts lack subject-matter jurisdiction to review Administrative Procedure Act claims against the TSA concerning decisions to terminate TSA security screeners).

Accordingly, the Court dismisses Plaintiff's Rehabilitation Act claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## II.  Title VII Claims (Second Cause of Action)

The Court notes that neither party has addressed whether the ATSA preempts claims brought by security screeners pursuant to Title VII.[8]  Plaintiff purports to bring Title VII

---

[8] In Defendant Nielsen's Reply, she argues that this Court should dismiss Plaintiff's hostile work environment and retaliation claims brought pursuant to Title VII because those claims arise out of the Rehabilitation Act claims, citing the Field case. Reply at 5.  However, Local Rule 7.4 requires the Court to disregard any arguments raised for the first time in a reply (Continued...)

claims under retaliation and hostile work environment theories because he allegedly engaged in protected EEO activity. Based upon the Court's research, it does not appear that Title VII claims brought by security screeners against the TSA are barred as a general matter. <u>See Simmons v. Napolitano</u>, Civil Action No. 3:11-0801, 2012 WL 1231969, at *2-5 (S.D. W. Va. April 12, 2012) (dismissing claims brought by a security screener for sex discrimination and religious discrimination under Title VII because plaintiff's complaint failed to meet the pleading standard required by Rule 8; but dismissing a disability discrimination claim brought under the Rehabilitation Act because the ATSA preempts such claims).

Because it does not appear that the ATSA preempts Title VII claims by TSA security screeners, and the parties have not properly briefed this issue, the Court declines to dismiss Plaintiff's Title VII claims at this time.

## III. Defendant TSA

Defendant Nielsen requests that the Court dismiss Defendant TSA because in a discrimination action against the federal government, the only proper defendant is the head of the affected agency in his or her official capacity. Mem. at 1, n. 1.

---

brief. Accordingly, the Court must disregard Defendant Nielsen's arguments about Plaintiff's Title VII claims.

Nowhere in his Opposition does Plaintiff oppose Defendant Nielsen's request for the Court to dismiss Defendant TSA.

Under Title VII, the appropriate defendant in a discrimination action is "the head of the department, agency, or unit." 46 U.S.C. § 2000e-16(c); <u>Romain v. Shear</u>, 799 F.2d 1416, 1418 (9th Cir. 1986). Here, Plaintiff has named both the TSA and Kirstjen M. Nielsen, Secretary of the United States DHS, as defendants. While Defendant Nielsen is an appropriate defendant under Title VII, the TSA is not. Accordingly, the Court dismisses the TSA from this action.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court GRANTS Defendant Nielsen's Motion with respect to Plaintiff's Rehabilitation Act claims. Because the Court lacks subject-matter jurisdiction over the Rehabilitation Act claims, those claims are DISMISSED WITH PREJUDICE. Defendant Nielsen's Motion is DENIED with respect to Plaintiff's Title VII claims. Finally, Defendant TSA is DISMISSED WITH PREJUDICE because it is not a proper defendant in a discrimination action against the federal government.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai`i, December 26, 2018.



Alan C. Kay
Sr. United States District Judge

Botelho v. Transportation Security Administration; and Kirstjen M. Nielsen,
Civ. No. 18-00032 ACK-RLP, Order Granting in Part and Denying in Part
Defendant's Motion to Dismiss.