IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI`I

_____
                                      )
MICHAEL BOTELHO,                      )
                                      )
              Plaintiff,              )
                                      )
      v.                              ) Civ. No. 18-00032 ACK-WRP
                                      )
ALEJANDRO MAYORKAS, U.S.              )
Secretary of the Department of        )
Homeland Security,                    )
                                      )
              Defendant.              )
_____)

<u>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 63)</u>

On March 9, 2012, former Transportation Security Administration ("TSA") employee Plaintiff Michael Botelho was removed from federal service.  In 2018, Botelho filed a complaint with this Court alleging two causes of action:  a violation of the Rehabilitation Act and a violation of Title VII.  ECF No. 1.  On December 26, 2019, this Court granted in part and denied in part Defendant Kirstjen M. Nielsen's motion to dismiss.  ECF No. 29.  What remains is Botelho's Title VII cause of action, alleging retaliation and a hostile work environment.  Defendant Alejandro Mayorkas has now moved for summary judgment on the remaining Title VII claims.  ECF No. 63. For the reasons discussed below, the Court GRANTS Defendant Mayorkas's Motion for Summary Judgment, ECF No. 63.

## BACKGROUND

The following facts are principally drawn from the Parties' Concise Statements of Fact ("CSF"), ECF Nos. 64, 101, and 106.

### I.   Factual Background

Botelho was hired as a Transportation Security Screener on November 10, 2002, to work at Honolulu International Airport ("HNL") and was promoted to Supervisory Transportation Security Screener at HNL in 2003.  See Def. Ex. 1.  In 2004, Botelho was demoted to Lead Transportation Security Screener at HNL after he was disciplined for using inappropriate language. See Def. Ex. 2.

On May 16, 2005, Botelho filed a formal EEO complaint regarding his demotion, alleging that another TSA employee sexually harassed him.  See Def. Ex. 3.  Around the same time, some sort of inquiry was conducted regarding Botelho's conduct at work.  Compl. at ¶ 8.  This inquiry, which Botelho does not describe, was apparently so stressful that it caused him to take leave for two and a half years.  Id. at ¶ 10.

The TSA issued Botelho a Notice of Proposed Removal ("NOPR") on January 26, 2007 based on his excessive absences and being absent without authorized leave.  See Def. Ex. 4.  Botelho was diagnosed with diabetes in February 2007.  Compl. ¶ 11.  The

2

TSA issued Botelho a second Notice of Removal on March 7, 2007.
Id. at ¶ 16.

Two days later, Botelho and the TSA entered into a
"Last Chance/Abeyance Agreement" that set forth certain terms
Botelho agreed to abide by for one year in order to avoid being
removed. See Def. Ex. 5. Botelho complied with the agreement
and withdrew his EEO complaint when he returned to work in 2007.
Compl. at ¶¶ 10, 16-17. On July 6, 2008, Botelho was assigned
to the position of Behavior Detection Officer and remained in
this position until he was terminated in March 2012. Id. ¶¶ 18-
19; see Def. Ex. 1.

In March of 2009, Botelho applied for intermittent
leave under the Family and Medical Leave Act ("FMLA") on the
basis of his diabetes diagnosis, which was granted. See Okinaka
¶ 4. In December of 2010, Botelho traveled to Cranbrook, Canada
to check on his rental properties. See Def. Ex. 1. Botelho
traveled with two other men who were filming their television
show, "Board Stories/Whiteroom Episodes." Id. Botelho had been
listed as an executive producer for other Board Stories
episodes. Id. According to Botelho, he intended to stay only a
few days in Canada. Id.

While in Canada, Botelho experienced a diabetic
reaction and his doctor informed Botelho not to fly home until

3

he felt better.  Id.  Botelho then called the TSA Coordination Center daily to invoke his FMLA leave.  Id.  Botelho remained in Canada on medical leave for two weeks before returning to work in Honolulu.  Compl. ¶¶ 22-25.  On days he credited all his work time to FMLA leave, Botelho accompanied his friends to a ski resort a "few times" and he snowboarded while being filmed for Board Stories.  See Def. Ex. 1.  Botelho also went out to dinners and attended a hockey game that was being filmed for Board Stories.  Id.

### a. FMLA Abuse Investigation

During a December 30, 2010 meeting, Thomas Biniek (Botelho's second-level supervisor) informed Pam Soto (Botelho's first-level supervisor) that Botelho was absent from his shift on FMLA leave.  Biniek Decl. ¶ 5.  Ms. Soto then told Mr. Biniek that it was common knowledge that Botelho went skiing each year at this time.  Id.  That same day, Botelho's car was observed in the airport parking lot.  Id. ¶ 8.

Mr. Biniek then raised Botelho's absence to his manager, Adam Myers.  Id. ¶ 9.  As a result, TSA managers monitored incoming flights to HNL to confirm Botelho's return to Hawaii.  Id. ¶ 10.  Botelho arrived at HNL on January 12, 2011.  See Def. Ex. 1.

4

Between January 21, 2011 and June 2, 2011, TSA's Office of Inspection formally investigated Botelho's misuse of FMLA. Okinaka Decl. ¶ 7. Cy Okinaka reviewed the report of investigation. Id. Mr. Okinaka also viewed a Board Stories video and saw Botelho, identifiable by his face, as well as another TSA employee snowboarding-Cory Matsuoka. Id. Mr. Okinaka interviewed Mr. Matsuoka, who identified Botelho in the excerpts of the video. Id. ¶ 8.

Shortly after the investigation closed, on June 27, 2011, Botelho stopped attending work. Id. ¶ 10. Botelho's physician submitted a note stating that Botelho was medically unable to work effective June 27, 2011, and it was not clear when he would be able to return. Id.; see Def. Ex. 6. Botelho was granted Leave Without Pay status through December 26, 2011. See Okinaka Decl. ¶ 11. Botelho was ordered to report to work on December 27, 2011, and explicitly warned that if he failed to do so, he would be marked Absent Without Leave-which could lead to further disciplinary action. Id. Botelho did not report to work on December 27, 2011, and he was recorded as Absent Without Leave. Id. ¶ 12.

As a result of Botelho's extended absences, Mr. Okinaka drafted a Notice of Proposed Removal, proposing to terminate Botelho's employment from TSA. Okinaka Decl. ¶ 15.

The NOPR cited two reasons for the termination:  unprofessional conduct and inability to maintain a regular full-time work schedule.  Id.; see Def. Ex. 8.  The NOPR set forth, inter alia, that Botelho had been absent from work from 9/15/2011 to 2/12/2012 and absent without official leave ("AWOL") from 12/27/2011 to 2/11/2012.  Def. Ex. 8.  The NOPR afforded Botelho a seven-day period in which to respond, but Botelho did not do so.  Okinaka Decl. ¶ 20.

Following the expiration of the response deadline, the Deputy Federal Security Director-Frank Abreu-reviewed and discussed the NOPR with Mr. Okinaka, and found the NOPR to be credible.  Abreu Decl. ¶ 7.  On March 9, 2012, Mr. Abreu signed the Notice of Decision for Removal, which removed Botelho from federal service.  Id. ¶ 9.  At the time of the issuance of the NOPR and the Notice of Decision for Removal, neither Mr. Okinaka nor Mr. Abreu possessed knowledge of Botelho's 2005 EEO activity.  Id. ¶ 10; Okinaka Decl. ¶ 19.

### b. Botelho's EEO Activity

While at TSA, Botelho engaged with EEO in 2005 and 2011.  On May 16, 2005, Botelho filed a formal EEO complaint regarding his demotion, alleging that another TSA employee sexually harassed him.  See Def. Ex. 3.  As discussed supra,

Botelho withdrew this EEO complaint after he was offered a Last Chance/Abeyance Agreement.  Compl. ¶ 10.

Botelho also made initial EEO contact on January 31, 2011.  See Def. Ex. 1.  Botelho then filed a formal EEO complaint in the first week of July 2011.  See Def. Ex. 10.

## II.  Procedural History

On January 19, 2018, Botelho filed a Complaint against the TSA and Elaine C. Duke in her official capacity as Acting Secretary of the United States Department of Homeland Security ("DHS").  ECF No. 1.  Botelho asserted claims against the Defendants pursuant to (1) the Rehabilitation Act of 1973 and (2) Title VII of the Civil Rights Act of 1964.  Compl. at ¶¶ 37-38.  Specifically, Botelho appeared to allege that he was discriminated against on the basis of his disability (diabetes), subjected to a hostile work environment, and retaliated against for engaging in a protected activity.  Prior to filing his Complaint in this Court, Botelho exhausted his administrative remedies on July 5, 2011 when he filed an Employment Opportunity ("EEO") complaint alleging that he was discriminated against on

the basis of his age, disability, and engaging in a protected activity.[1/]  Id. at ¶ 32.

On June 1, 2018, Defendant Kirstjen M. Nielsen, Secretary of the United States DHS, filed a Motion for Dismissal or, in the Alternative, for Summary Judgment.  ECF No. 15.  On December 26, 2019, this Court granted in part and denied in part Nielsen's motion to dismiss.  ECF No. 29.

On August 7, 2021, Defendant Alejandro Mayorkas moved for summary judgment on the remaining Title VII claims, ECF No. 63.  Defendant also submitted a CSF in support, ECF No. 64.  Botelho filed his Opposition, ECF No. 100, and a CSF in Opposition, ECF No. 101.  Defendant filed his Reply, ECF No. 104, and CSF in support, ECF No. 106.  A hearing on the Motion was held on September 23, 2021.

## **STANDARD**

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to

---

[1/]  It appears that Botelho did not include his hostile work environment claim in his EEO complaint.  See ECF No. 1-1, Final Order at 2-3.  However, at the hearing, in response to the Court's questioning regarding his apparent failure to exhaust his administrative remedies regarding his claim, Defendant's counsel stated Defendant had not pursued such apparent failure because an EEO investigator had noted he construed the EEO complaint as including a hostile work environment claim.

judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Rule 56(a)
mandates summary judgment "against a party who fails to make a
showing sufficient to establish the existence of an element
essential to the party's case, and on which that party will bear
the burden of proof at trial."  Celotex Corp. v. Catrett, 477
U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); see also Broussard
v. Univ. of Cal., 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial
burden of informing the court of the basis for its motion and of
identifying those portions of the pleadings and discovery
responses that demonstrate the absence of a genuine issue of
material fact."  Soremekun v. Thrifty Payless, Inc., 509 F.3d
978, 984 (9th Cir. 2007) (citing Celotex, 477 U.S. at 323, 106
S. Ct. at 2553); see also Jespersen v. Harrah's Operating Co.,
392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has
carried its burden under Rule 56[(a)] its opponent must do more
than simply show that there is some metaphysical doubt as to the
material facts [and] come forward with specific facts showing
that there is a genuine issue for trial."  Matsushita Elec.
Indus. Co. v. Zenith Radio, 475 U.S. 574, 586–87, 106 S. Ct.
1348, 89 L. Ed. 2d 538 (1986) (citation and internal quotation
marks omitted and emphasis removed); see also Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91
L. Ed. 2d 202 (1986) (stating that a party cannot "rest upon the

mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (citing Anderson, 477 U.S. at 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538; see also Posey v. Lake Pend Oreille Sch. Dist. No. 84, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (internal citation and quotation omitted)).

## **DISCUSSION**

As discussed above, the Court must decide whether to grant Defendant summary judgment on the remaining Title VII claims. For the reasons set forth below, the Court finds summary judgment is warranted on both the retaliation and hostile work environment Title VII claims.

10

## I.   Title VII Retaliation Claim

Defendant Mayorkas first moves for summary judgment on Botelho's claim that he was retaliated against based on his prior EEO activity.  Specifically, Defendant argues that Botelho cannot establish a prima facie case of retaliation, and even if he could, the TSA had a non-retaliatory reason for its personnel action against Botelho.  Mot. at 10, 16.  The Court agrees.

### a. Prima Facie Case

To prevail on his retaliation claim, Botelho must show that "(1) he engaged or was engaging in activity protected under Title VII, (2) the employer subjected him to an adverse employment decision, and (3) there was a causal link between the protected activity and the employer's action." Yartzoff v. Thomas, 809 F.2d 1371, 1375 (9th Cir. 1987); see also Vasquez v. Cty. of L.A., 349 F.3d 634, 646 (9th Cir. 2003).  The parties do not dispute that protected activity encompasses prior EEO activity.  See Learned v. City of Bellevue, 860 F.2d 928, 932-33 (9th Cir. 1988).

The parties dispute whether Botelho has established the third element of a prima facie case:  a causal link between the protected activity and the employer's action.  Mot. at 11. The causal link element is governed by a "but for" test.  Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 362, 133 S. Ct. 2517, 2534, 186 L. Ed. 2d 503 (2013).

Botelho contends that he was terminated in retaliation for his prior EEO activity.  Opp. at 12.  But Botelho has failed to raise a genuine issue of material fact that the proposing official-Cy Okinaka-or the deciding official-Frank Abreu-considered Botelho's prior EEO activity during the removal process.  Indeed, Botelho fails to provide any evidentiary support to the contrary.  Instead, without a citation to any evidence, Botelho asserts that Ms. Alo stated in her deposition "that she was aware of Plaintiff's prior EEO activity, when he filed an EEO complaint against his then-supervisor Warren Kadokawa."  Opp. at 12.  However, Botelho has provided no evidence that Ms. Alo was the deciding official or even had any say in his termination.[2/]

To the extent that Botelho relies on temporal proximity to demonstrate causation, he fails to show that the adverse employment action (Botelho's removal) occurred in close

_____

[2/] Botelho also raises the "cat's paw theory"-that a biased subordinate influenced the decision to remove him or was involved in the decision-making process.  Opp. at 14 ; see Poland v. Chertoff, 494 F.3d 1174, 1182 (9th Cir. 2007) ("[I]f a subordinate, in response to a plaintiff's protected activity, sets in motion a proceeding by an independent decisionmaker that leads to an adverse employment action, the subordinate's bias is imputed to the employer if the plaintiff can prove that the allegedly independent adverse employment decision was not actually independent because the biased subordinate influenced or was involved in the decision or decisionmaking process.").  Yet Mr. Biniek was unaware of Botelho's 2005 EEO activity, Biniek Decl. ¶ 12, and Botelho concedes that it was Mr. Biniek who raised Botelho's leave abuse, and that Botelho has no evidence that Mr. Biniek knew about his 2005 EEO activity.  Opp. at 14.  Indeed, Mr. Botelho's supposed evidence of Mr. Biniek's knowledge of the prior EEO activity was based on "intuition."  Opp. at 14-15; see Def. Ex. 1.  Botelho has clearly failed to set forth any admissible evidence that any of the subordinates of the deciding official-Frank Abreu-were biased and influenced the decision on Botelho's termination.

proximity to his protected activity (the 2005 and 2011 EEO activity).  Temporal proximity between an employer's knowledge of protected activity and an adverse employment action is sufficient to establish a prima facie case, but the temporal proximity must be "very close."  Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511, 149 L. Ed. 2d 509 (2001); see, e.g., Govan v. Sec. Nat. Fin. Corp., 502 F. App'x 671, 674 (9th Cir. 2012) (6-month period insufficient); Manatt v. Bank of Am., NA, 339 F.3d 792, 802 (9th Cir. 2003) (9-month period insufficient); Swan v. Bank of Am., 360 F. App'x 903, 906 (9th Cir. 2009) (4-month period insufficient).  The Ninth Circuit has "caution[ed] that a specified time period cannot be a mechanically applied criterion," because "[a] rule that any period over a certain time is per se too long (or, conversely, a rule that any period under a certain time is per se short enough) would be unrealistically simplistic." Coszalter v. City of Salem, 320 F.3d 968, 977-78 (9th Cir. 2003).

Here, the prior EEO activity alleged is in May of 2005 and January of 2011.  See Def. Ex. 3.  By the time Botelho was removed in March of 2012, it had been more than six years since his 2005 EEO activity, and eight months since his 2011 EEO activity.  Such a timeline by itself suggests no causality. Further, Defendant points out that Botelho contacted an EEO

counselor ten days _after_ TSA began its investigation into Botelho's trip to Canada.  Mot. at 13; _see_ Okinaka Decl. ¶ 7. Botelho does not rebut Defendant's assertion that the 2011 EEO activity was filed to forestall a potential disciplinary action against him.  _See_ Mot. at 12; Reply at 6.

Thus, regardless of any temporal proximity, the FMLA abuse investigation and subsequent termination cannot be considered retaliatory.  _See_ _Miller v. Fairchild Indus., Inc._, 797 F.2d 727, 731 n.1 (9th Cir. 1986) ("[W]e simply reached the obvious conclusion that an employer who had already decided upon a course of action adverse to the plaintiff prior to learning of the plaintiff's protected activity did not intend to retaliate.").

Without a causal link between Botelho's protected EEO activity and his termination, Botelho has failed to establish a prima facie case of retaliation.

**b. Non-Retaliatory Reason**

Even assuming arguendo that Botelho could establish a prima facie case, Defendant further argues that Botelho is unable to rebut the non-retaliatory reason for his termination. Mot. at 16.

If Botelho could establish a prima facie case, the _McDonnell Douglas_ framework applies, under which the burden shifts to Defendant to show a non-retaliatory justification for

14

the challenged action, and then back to Botelho to show that the proffered justification is pretextual.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973); see Davis v. Team Elec. Co., 520 F.3d 1080, 1093-94 (9th Cir. 2008).  Even assuming Botelho met his burden of proving a prima facie case, Defendant nonetheless set forth legitimate, non-retaliatory reasons for Botelho's termination.

According to the TSA, Botelho's removal was based on two reasons:  his FMLA abuse and his inability to maintain a full-time work schedule.  See Def. Ex. 4.  Mr. Okinaka stated that either one of those two specifications on its own would have been sufficient to terminate Botelho.  Okinaka Decl. ¶ 18. The deciding official, Mr. Abreu, reviewed the NOPR prepared by Mr. Okinaka, as well as the video footage of Botelho snowboarding in Canada.  See Def. Ex. 9.  In his decision, Mr. Abreu found that Botelho's activities while in Canada-socializing, snowboarding, and assisting with the snowboarding television show-were "inconsistent" with his claimed debilitating diabetic reaction supporting FMLA.  Id.  Based on these facts, the Court finds that Botelho's misuse of FMLA was a legitimate, non-retaliatory reason for his removal.

Botelho's inability to perform the essential functions of his positions-maintaining a full-time work schedule-was also a legitimate, non-discriminatory reason for his termination.

15

Botelho was required to return to work on December 27, 2011 because his Leave Without Pay Status expired on December 26, 2011.  See Okinaka Decl. ¶ 11.  Botelho failed to return to work on December 27, 2011.  Id. ¶ 12.  As discussed supra, Botelho had been absent from work from 9/15/2011 to 2/12/2012 and AWOL from 12/27/2011 to 2/11/2012.  See Def. Ex. 8.[3/]  In his deposition, Botelho agreed that he was unable to maintain a regular full-time work schedule.  See Def. Ex. 1.[4/]  Botelho also testified that he believes his employment with TSA was terminated "because [he] was still medically off work."  Id.  Failure or inability to go to work as scheduled is a legitimate, nonretaliatory reason to terminate employment.  See Nguyen v. Dep't of Navy, 412 F. App'x 926, 929 (9th Cir. 2011).

The burden thus shifts back to Botelho to show these stated reasons regarding his performance were mere pretext.  See Surrell v. California Water Serv. Co., 518 F.3d 1097, 1105-06 (9th Cir. 2008).  A "plaintiff may establish pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."

---

[3/]  The Court notes, as stated earlier, that the TSA previously issued Botelho a NOPR on January 26, 2007, based on similar reasons:  his excessive absences and being absent without leave.  See Def. Ex. 4.

[4/]  "Q: Do you agree with the agency's second charge, which was that you were unable to maintain a regular full time work schedule?

A: I mean yeah, it says it here, so—yes."

Def. Ex. 1 at 100:24-101:2.

Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc., 642 F.3d 728, 746 (9th Cir. 2011) (quoting Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998)).  If a plaintiff uses circumstantial evidence to satisfy this burden, such evidence "must be specific" and "substantial."  Id.

Botelho has not offered evidence that would carry his burden of showing that Defendant's justification was pretextual. Botelho fails to identify evidence that would either directly persuade the Court that a retaliatory reason more likely motivated Defendant or indirectly demonstrate that Defendant's proffered explanation is unworthy of credence.  See Kaaumoana v. Dejoy, Civ No. 19-00294 JAO-KJM, 2021 WL 1270452, at *3 (D. Haw. April 6, 2021) (citing Campbell v. Hawaii Dep't of Educ., 892 F.3d 1005, 1016-17 (9th Cir. 2018)).  Indeed, Botelho does not appear to dispute that the action Defendant took against Botelho flowed from the investigation into Botelho's use of FMLA and extended absences from work.

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment with regard to Botelho's Title VII retaliation claim.

## II.  Title VII Hostile Work Environment Claim

Defendant also moves for summary judgment on Botelho's Title VII hostile work environment claim.  This claim appears to also arise out of the investigation into his use of FMLA leave

17

while in Canada and his termination over a year later. Defendant argues that such a claim is time-barred and that the incidents described by Botelho are not sufficiently severe such that Botelho can state a prima facie case.  Mot. at 20-22.  The Court again agrees.

### a. Timeliness of the Hostile Work Environment Claim

As a threshold matter, Defendant argues that Botelho failed to consult with an EEO counselor within forty-five days of the alleged discriminatory events, as required by 29 C.F.R. § 1614.105(a)(1).  Id.  Botelho's briefing fails to address the timeliness of his claims.

Title VII requires a plaintiff to exhaust his administrative remedies prior to filing suit.  Gipaya v. Dep't of the Air Force, 345 F. Supp. 3d 1286, 1295 (D. Haw. 2018). Failure to contact a counsel within the required time frame can be dispositive:

> 29 C.F.R. § 1614.105(a)(1) requires a federal employee who believes that she has been subjected to . . . discrimination in the workplace to initiate contact with an EEO counselor within forty-five days of the alleged discrimination.  The forty-five day period, however, is "subject to waiver, estoppel, and equitable tolling." See 29 C.F.R. § 1614.604(c).  If waiver, estoppel or equitable tolling does not apply, failure to comply with § 1614.105(a)(1) is "fatal to a federal employee's discrimination claim in federal court."  Kraus v. Presidio Trust Facilities Div./Residential Mgmt. Branch, 572 F.3d 1039, 1043 (9th Cir. 2009) (citations and internal quotation marks omitted).

Banks v. McHugh, Civ No. 11-00798 LEK-KSC, 2014 WL 2932479, at
*2 (D. Haw. June 30, 2014).  "Equitable estoppel focuses on the
defendant's wrongful actions preventing the plaintiff from
asserting his claim," whereas equitable tolling "focuses on a
plaintiff's excusable ignorance and lack of prejudice to the
defendant."  Leong v. Potter, 347 F.3d 1117, 1123 (9th Cir.
2003).

Botelho contacted an EEO official on January 31, 2011.
See Def. Ex. 10.  Therefore, any incidents related to the claim
which occurred more than forty-five days prior to that date, are
time-barred as the Court does not see-and Botelho does not
argue-any facts to support an argument of waiver, estoppel, or
tolling.  This includes Botelho's assertion that he was treated
differently following his 2004 demotion and his 2005 sexual
harassment claim.[5/]  Opp. at 19; see Pl. Ex. 1.

Two incidents were raised to the EEO counselor within
forty-five days of their occurrence:  the investigation into
Botelho's use of FMLA while he was in Canada, and his subsequent
termination in 2012.  The Court therefore addresses the merits

---

[5/]  Moreover, by withdrawing his 2005 EEO complaint under the Last
Chance/Abeyance Agreement, the claims asserted in that complaint are
considered abandoned and Botelho has failed to exhaust his administrative
remedies.  See Bankston v. White, 345 F.3d 768, 771 (9th Cir. 2003) (citing
Vinieratos v. United States Dep't of Air Force, 939 F.2d 762 (9th Cir. 1991)
and McAdams v. Reno, 64 F.3d 1137, 1141 (8th Cir. 1996)); Bowers v.
Nicholson, 271 Fed. App'x 446, 449 (5th Cir. 2008).

of the hostile work environment claim predicated on those two incidents.

### b. Merits of the Hostile Work Environment Claim

A hostile work environment claim relies on a series of separate acts that collectively are so severe and offensive that they alter the conditions of plaintiff's employment.  Williams v. Modly, 796 Fed. App'x 378, 380-81 (9th Cir. 2020) (citing Nat'l Ry. Passenger Corp. v. Morgan, 536 U.S. 101, 117, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)).  "Not every insult or harassing comment will constitute a hostile work environment." Ray v. Henderson, 217 F.3d 1234, 1245 (9th Cir. 2000).  The work environment must be both subjectively and objectively perceived as abusive.  Campbell, 892 F.3d at 1016-17.  A court considers all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 371, 126 L. Ed. 2d 295 (1993).

The information Botelho provided regarding the alleged hostile work environment is mild and vague at best.  For instance, during his deposition, Botelho testified that he was treated differently after his demotion (which occurred in 2004) and his sexual harassment claim (which occurred in 2005).  See

Def. Ex. 1.  Botelho described managers who did not speak to him, colleagues whose attitudes changed toward him, and not receiving duty assignments.  Id.  But as discussed supra, such incidents are time-barred as they were not timely raised to an EEO contact.

Botelho also argues that his use of FMLA was investigated "without going through proper official channels." Opp. at 20.  Botelho does not explain how the action contributed to a hostile work environment.  In his Opposition, Botelho attaches but does not reference the deposition of Kathie Kaopuiki-Nestrick, in which she says that she did not have "the authority to ask any airline for a manifest" but instead had to call the Missions Operations Center ("MOC").  See Pl. Ex. 1. Botelho's counsel did raise the foregoing deposition testimony at the hearing.  Ms. Kaopuiki-Nestrick did not contact the MOC regarding the Botelho investigation.  Id.

As the government points out, Botelho was legitimately suspected of misusing FMLA, so his use of FMLA was investigated. Mot. at 23.  Over a year later, a large portion of which Botelho failed to report to work, Botelho was terminated (1) due to his admitted inability to maintain a full-time work schedule, including being AWOL for about six weeks, and (2) as well as due to his unprofessional conduct, including wrongful use of FMLA. Id. at 23-24; see Def. Ex. 8, 9.  Such an investigation cannot

be the basis for a hostile work environment claim.  See Surrell, 518 F.3d at 1108 (9th Cir. 2008) (finding no hostile work environment based on comments that "were all performance related" without a showing that any protected status was involved).

Considering the totality of the circumstances, the acts raised by Botelho were not so serious or pervasive as to alter the conditions of Botelho's employment.  See Jura v. Cty. of Maui, Civ. No. 11-00338 SOM/RLP, 2012 WL 5187845, at *7 (D. Haw. Oct. 17, 2012) ("Title VII is not a general civility code for the American workplace.") (internal citation and quotation marks omitted); Succar v. Dade Cty. Sch. Bd., 229 F.3d 1343, 1345 (11th Cir. 2000) (stating that "[p]ersonal animosity is not the equivalent of sex [or race] discrimination," and that a plaintiff "cannot turn a personal feud into a sex [or race] discrimination case.").  There is no genuine issue of material fact as to whether a hostile environment existed here.

## CONCLUSION

For the reasons discussed above, the Court GRANTS Defendant Mayorkas's Motion for Summary Judgment, ECF No. 63. There being no remaining claims in this case, the Clerk's Office is DIRECTED to enter judgment and close this case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai`i, September 30, 2021.



_____
Alan C. Kay
Sr. United States District Judge

<u>Botelho v. Mayorkas</u>, Civ. No. 18-00032 ACK-WRP, Order Granting Defendant's
Motion for Summary Judgment (ECF No. 63).